**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**MICROSOFT CORPORATION,**

        **Plaintiff,**

**-vs-**	Case No. 6:05-cv-1346-Orl-28DAB

**RAVEN TECHNOLOGY, INC., AL BRINGARDNER, BRETT BRINGARDNER, NOAH J. PLANTE AND SCOTT JACOBY,**

        **Defendants.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:** **MOTION FOR DEFAULT JUDGMENT AGAINST RAVEN TECHNOLOGY (Doc. No. 38)**
>
> **FILED:** January 6, 2006
> _____
>
> **THEREON** it is **RECOMMENDED** that the motion be **GRANTED**, in part.

The procedural history, as reflected in the docket, is a bit complex. On September 15, 2005, Plaintiff filed a Complaint against Raven Technology, Inc. (herein "Raven") among others, for copyright and trademark infringements, false designation of origin, and unfair competition (Doc. No. 1). A Summons was issued and executed on the purported registered agent, Roy Shure (Doc. No. 11). On October 11, 2005, Mr. Shure, as "owner" of Raven filed a motion for more definite

statement, which the Court promptly struck as unauthorized, noting that Raven must appear through counsel if at all (Doc. Nos. 13 and 15). No such appearance was made.

On November 2, 2005, Plaintiff filed a request for entry of clerk's default against Raven (Doc. No. 21), and the Clerk obliged (Doc. No. 24). Following entry of default, Plaintiff filed an Amended Complaint (Doc. No. 32). There is no indication that the Amended Complaint was served on the corporation, although it was served on Shure, as an individually named defendant.

Plaintiff now moves for entry of a default judgment against Raven and supports its motion with a brief (Doc. No. 39) and Affidavits and Declarations (Doc. No. 43). Plaintiff has also provided a Proposed Order and a Proposed Injunction, should the Court be inclined to grant the instant motion (Doc. No. 39, Exhibits A and B). The Court has reviewed the motion and supporting papers and **respectfully recommends** that the motion be **granted, in part.** Specifically, the Court recommends that a default judgment be entered, and statutory damages be awarded in the total amount of $10,500.00 (and not the $810,000.00 requested); that the proposed Permanent Injunction be entered, with one substitution; and that an award of attorney's fees be entered in the amount of $2,000.00, and not the requested $7,474.04 sought by Plaintiff.

### *STANDARD OF REVIEW*

The effect of the entry of a default is that all of the factual allegations in the Complaint are taken as true, save for the amount of unspecified damages. Thus, if liability is well-plead in the complaint, it is established by the entry of a default. *Buchanan v. Bowman,* 820 F.2d 359, 361 (11th Cir. 1987). A court may enter a default judgment only if the factual allegations of the complaint provide a sufficient legal basis for entry of a default judgment. *Nishimatsu Constr. Co. v. Houston National Bank,* 515 F. 2d 1200, 1206 (5th Cir. 1975). If the amount of damages sought are not

specified in the Complaint, Plaintiff must prove up the unliquidated sums, in a hearing on damages or otherwise. Rule 55(b)(2), Federal Rules of Civil Procedure.

### *ISSUES AND ANALYSIS*

*Liability*

The motion is directed towards the Complaint, and not the Amended Complaint, which was filed after default was entered. The Complaint alleges that Defendants (including Raven) are engaged in advertising, marketing, installing and distributing computer software, including Microsoft's programs (Complaint at ¶ 15). The Complaint asserts that Defendants were involved in counterfeiting and infringing Microsoft's copyrights and trademarks (Complaint ¶¶ 15 -23), that Defendants acted "with willful blindness to and in reckless disregard of" Microsoft's rights (Complaint at ¶¶ 27, 39), and that Plaintiff was injured thereby. The Complaint specifically alleges that Microsoft notified Defendants by letter dated March 31, 2004, that its conduct constituted infringing activity, and directed Defendants to cease and desist (Complaint at Allegation 17). Nevertheless, on or about May 25, 2005, Defendants distributed computer systems with unauthorized copies of software installed, and have distributed counterfeit software on other occasions (*Id.* at 18).

By application of the above standards of law, Defendant Raven admits these well-pled allegations, all of which support a conclusion that, as alleged, Raven is liable for copyright infringement, trademark infringement, false designation of origin, and unfair competition.

*Damages*

The Complaint does not specify the exact amount sought for damages, however, it does reference entitlement to statutory damages under 17 U.S.C. § 504(c) for its copyright infringement

claim, and statutory damages for the counterfeit mark count under 15 U.S.C. § 1117(c). In its papers, Plaintiff elects statutory damages, in lieu of proving up actual damages (Doc. No. 39 at 8).

The applicable provisions of the Copyright Act and the Lanham Act provide:

(c) Statutory Damages.--

(1) Except as provided by clause (2) of this subsection, the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just. For the purposes of this subsection, all the parts of a compilation or derivative work constitute one work.
(2) In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000. In a case where the infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $200 . . .

17 U.S.C. § 504 (for copyright infringements).

c) Statutory damages for use of counterfeit marks

In a case involving the use of a counterfeit mark (as defined in section 1116(d) of this title) in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a) of this section, an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of--
(1) not less than $500 or more than $100,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or
(2) if the court finds that the use of the counterfeit mark was willful, not more than $1,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

15 U.S.C. § 1117 (trademarks).

Here, Microsoft is asking for an award of $100,000 for each of the six trademarks at issue and $30,000 for each of the six copyrights at issue, for a total of $810,000.00 (Doc. No. 39 at 13). According to the Court's calculation, however, six times $100,000, plus six times $30,000, equals $780,000.00. The Court assumes that this is the amount Microsoft is actually seeking. This is the maximum amount that the statutes authorize for non-willful infringement, and substantially less than the maximum available for willful infringement. Although the Court has wide discretion in determining the amount of damages within the statutory limits, Microsoft has not introduced enough evidence to support this high six figure amount.

In this district, the Court considers several factors in exercising its discretion: 1) the expenses saved and profits reaped by the infringer; 2) revenues lost by the copyright holder as a result of the infringement; 3) and the infringer's state of mind, whether willful, knowing, or innocent. *See Cable/Home Communication Corp. v. Network Productions, Inc.,* 902 F. 2d 829 (11th Cir. 1990); and *Nick-O-Val Music, Inc. v. P.O.S. Radio Inc.,* 656 F. Supp. 826 (M.D. Fla. 1987). Additionally, the Court is mindful of the purposes of the statutory provisions: restitution, preventing unjust enrichment, reparation of injury and, notably, deterrence. *Nintendo of America, Inc. v. Ketchum*, 830 F. Supp. 1443, 1445 (M.D. Fla. 1993).

Although the Complaint alleged willful infringements, and Raven's default admits same, there is no evidence as to the first two factors noted above. As such, the Court cannot ascertain whether Raven Technology was a "big fish," trafficking in the illegal use of the protected copyrights and marks on a large scale, or a "little fish" mom-and-pop operation, with occasional (but nonetheless illegal) transgressions, due largely to a lack of familiarity with the copyright and trademark laws. Although Microsoft has introduced evidence that Raven was notified of the infringements and

cautioned to desist, but did not do so (*see* the Jean Agnew Declaration, Doc. No. 43), it is not clear if that action was willful defiance or a failure on the part of Raven to comprehend the seriousness of the situation.  While the Court is not endorsing naiveté as a defense to a suit for willful infringement, the Court cannot award such a significant amount without at least some evidence as to the extent and significance of the injury to Microsoft (above and beyond that of presumed injury which is inherent in any violation and subsumed in the statutory minimum), or profit to Raven.[1]  Taking all of the factors into consideration, the Court finds that Plaintiff is entitled to $1,000.00 for each of the six copyrights infringed, and $750.00 for each of the six marks, for a total award of **$10,500.00.**

### *Injunctive Relief*

The Court finds the proposed injunction (Doc. No. 39 at 25) to be in order, for the most part, and appropriate under the circumstances.  The Complaint sought injunctive relief, and the proposed injunction is tailored to prohibit any and all counterfeit uses of the registered copyrighted materials and marks.  The only modification the undersigned would recommend would be the following: On page 26, the proposed language purports to enjoin "Defendant Raven Technology, Inc., a Florida corporation, its directors, principals, officers, agents, servants, employees, representatives, successors and assigns, and all those acting in concert or participation with it . . .".

This language is overbroad.  Plaintiff has shown entitlement to an injunction against the corporation and all those who act *knowingly* on *its* behalf.  The proposed language is not limited to actions of the corporation, but extends to all those who are associated with the corporation, in any

---

[1] The Court is mindful of Microsoft's contention that Raven's default deprived Microsoft of discovery as to the extent of the infringements and resulting profit to Raven and loss to Microsoft, and that statutory damages are provided for just such a situation.  Of course, Microsoft could have pursued discovery, notwithstanding the default. In any event, Microsoft still must provide a reason to depart from the statutory minimum.  To hold otherwise would result in the maximum award for every default judgment.  Such a result is not consistent with the statutory direction that a court exercise discretion in fashioning an award.

-6-

capacity, but are not necessarily acting on its behalf. Thus, the wording of the injunction is broad enough to include an unnamed, low level employee who may not even be aware of the injunction. As such, the injunction would subject such an employee to contempt for, say, loading a friend's copy of Microsoft Office on his home computer. While Microsoft would no doubt argue that such a use is illegal and should be prohibited in any event, clearly such activity is beyond the scope of this Complaint. The Court suggests that the following language be substituted:

"Defendant Raven Technology, Inc., a Florida corporation, and any and all directors, principals, officers, agents, employees, representatives, successors or assigns, acting on its behalf . . ."

With that change, the Court **recommends** that the Court grant the request for injunctive relief.

*Attorney's Fees*

Plaintiff asks for an award of attorney's fees in the total amount of $7,474.04, against Raven. As for entitlement, Plaintiff correctly notes that the Copyright Act allows for a discretionary award of attorney's fees and costs to the prevailing party. *See* 17 U.S.C. § 505. Moreover, the Lanham Act allows for an award of fees to the prevailing party in "exceptional cases." 15 U.S.C. § 1117(a). Plaintiff argues that in view of the recurring infringement, despite notice, an award of fees is appropriate, and this Court agrees. *See Microsoft Corp. v. Black Cat Computer Wholesale, Inc.,* 269 F. Supp.2d 118 (W.D. N.Y. 2002) (willful infringement of software copyrights and trademarks by seller of counterfeit goods warrants award of attorneys fees in addition to damages). At issue is the appropriate amount of the award.

The supporting papers include the Affidavit of Christopher Annunziato (Doc. No. 43 at 15), who avers that he is "one of the attorneys . . . with primary responsibility for the representation of Microsoft in this matter. . .". The Affidavit of Caroline Johnson Tanner in Support of Attorney's

Fees (Doc. No. 43 at 19) indicates that she is the responsible partner and billing partner on the file, while Mr. Annunziato is a senior associate and local counsel for Microsoft.  Ms. Tanner avers that she has spent 11 hours at the billed rate of $281.93, on prosecuting the case against this Defendant and Mr. Annunziato has spent 18.1 hours at the billed rate of $241.65 per hour.[2]  No billing records are presented for the Court's review, and the only evidence of the work performed or the reasonableness of the fees sought are the summary contained in Ms. Tanner's Affidavit and her opinion that the fees charged are "reasonable for the market place."

In evaluating the appropriate amount of the award, the Court follows the familiar lodestar approach, and is guided by the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F. 2d 714 (5th Cir. 1974). *See Casella v. Morris*, 820 F.2d 362 at 367 (11th Cir. 1987)(noting that an award of attorney's fees under the Copyright Act is governed by the guidelines).  "The starting point in fashioning an award of attorney's fees is to multiply the number of hours reasonably expended by a reasonable hourly rate." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (per curiam); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation.  *Gaines v. Dougherty County Board of Education*, 775 F.2d 1565, 1571 (11th Cir. 1985).

Factors to be considered when setting a fee include:  1) the time and labor required; 2) the novelty and difficulty of the issues; 3) the skill required to perform the legal services properly; 4) preclusion of other employment; 5) the customary fee; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or circumstances; 8) the amount involved and the results

---

[2]The Affidavit notes that these rates reflect a discount from the standard hourly rates.

obtained; 9) the experience, reputation and ability of the attorneys; 10) the undesirability of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). The going rate in the community is the most critical factor in setting the fee rate. *Martin v. University of South Alabama*, 911 F.2d 604, 610 (11th Cir. 1990).

Here, Ms. Tanner does not provide an hourly breakdown of the charges, but notes that the total includes "hours spent on preparation, filing and service of the complaint against Raven, communication with Raven's registered agent concerning the complaint and the answer, reviewing and responding to Raven's motion for more definite statement, and preparation of the papers relating to Raven's default in this matter." (Doc. No. 43 at 20). The Complaint, however, includes other Defendants, and although counsel asserts that she "excluded legal work relating to other defendants" this seems highly unlikely in view of the fact that each count of the Complaint pertained to *all* Defendants and Plaintiff admits that "because of the number of defendants in the case, it is impossible to determine which costs relate specifically to Raven." (Doc. No. 43 at 21). Plaintiff is only entitled to recover against this particular Defendant time spent on prosecuting only this Defendant. As counsel has not provided details regarding exactly how much time is charged to this Defendant for tasks that relate to all the Defendants, the Court cannot assume that counsel made appropriate adjustments. Moreover, counsel references pleadings that were never filed such as Raven's "answer," and "responding to Raven's motion for more definite statement."[3] Absent a detailed view of time

---

[3]The motion for more definite statement was filed on October 11 and stricken on October 12 (docketed on October 14). Plaintiff filed no pleading in response in that brief interim.

spent on each task, and in view of these discrepancies, the claimed amount is not established as reasonable.

An award of $2,000.00 is reasonable, in view of the *Johnson* factors. The issues are not novel or difficult, and the expertise required was that of any competent member of the bar familiar with intellectual property issues. There is no evidence that the representation precluded other employment. Nor is there evidence to suggest that the amount involved or results obtained warrant an enhanced award. As for the nature and length of the professional relationship with the client, a review of the docket in this district alone reveals numerous suits filed by this firm on behalf of Microsoft over the course of several years, thus indicating that Microsoft is a well-established client. In view of the regular nature of the employment and the desirability of the client it is reasonable to conclude, as counsel did here, that a discounted rate is appropriate. It is also reasonable to conclude, as this is not the first anti-piracy suit prosecuted by this firm for this client, that counsel did not start wholly from scratch in researching the legal issues involved and drafting the Complaint, nor in drafting the instant motion. (*Compare* the instant motion with Doc. No. 17 in Case No. 8:02cv536-T-17TBM, *Microsoft Corporation v. Pro-Line Software, Inc. d/b/a/ Pro-Line Software, et al.*). Upon review of all of the evidence and the guidelines, the Court finds that the going rate in this community for similar work by lawyers of similar skill for this particular client would be no more than $250.00 an hour, and it would take approximately 8 hours to prosecute the case against this Defendant to this point. As such, the Court **respectfully recommends** an award of $2,000.00.

### *CONCLUSION*

It is **respectfully recommended** that the motion be **granted, in part, as follows:** 1) that default judgment be entered in favor of Plaintiff and Plaintiff awarded damages in the total amount

of **$10,500.00**, and attorney's fees in the amount of **$2,000.00; and** 2) that the proposed Injunction be entered, with the substitution set forth above. As Plaintiff has waived costs, it is recommended that no cost award be made.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on February 1, 2006.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Parties
Courtroom Deputy