**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**MICROSOFT CORPORATION,**

        **Plaintiff,**

**-vs-**                                          **Case No. 6:05-cv-1346-Orl-28DAB**

**RAVEN TECHNOLOGY, INC., AL
BRINGARDNER, BRETT
BRINGARDNER, NOAH J. PLANTE AND
SCOTT JACOBY,**

        **Defendants.**

_____

**REPORT AND RECOMMENDATION AND ORDER**

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:**    **MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION AGAINST DEFENDANT MARJORIE HIGGINBOTHAM (Doc. No. 66)**
>
> **FILED:**    **November 15, 2006**
> _____
>
> **THEREON** it is **RECOMMENDED** that the motion be **GRANTED, in part**.

> **MOTION:**    **MOTION TO EXTEND TIME TO FILE DISPOSITIVE MOTIONS (Doc. No. 74)**
>
> **FILED:**    **December 8, 2006**
> _____
>
> **THEREON** it is **ORDERED** that the motion is **DENIED** as moot.

As set forth in prior Order, the procedural history of this case is somewhat complex, with respect to this Defendant. According to the Amended Complaint filed on December 13, 2005, "upon information and belief, [Defendant] Marjorie Higginbotham resides and transacts substantial business in this district."(Doc. No. 32 at 4). Nonetheless, according to its papers, Microsoft initially "served" the Amended Complaint on January 16, 2006, in Massachusetts, using a Massachusetts' constable (Doc. No. 47). Due to a question regarding the effectiveness of that service, Microsoft says that it re-served Higginbotham on March 20, 2006 (Doc. No. 52). It sought entry of a clerk's default and the Clerk complied. The Court ordered that default vacated, due to the lack of an evidentiary basis establishing that proper service was had (Doc. No. 57). The denial of the default was without prejudice to renewal of the motion, upon a proper showing.

On May 26, 2006, Plaintiff renewed its motion for entry of default (Doc. No. 58), and supplemented the motion with an Affidavit addressing the Court's concerns (Doc. No. 59). The Clerk entered a default as to this Defendant on May 30, 2006 (Doc. No. 60). Following an extended period of time in which Plaintiff reports that it entered into settlement negotiations with Higginbotham (Doc. No. 64), Plaintiff now moves for entry of a default judgment against her and supports its motion with the Declaration of Caroline Johnson Tanner (Doc. No. 67). Plaintiff has also provided a Proposed Order and a Proposed Injunction, should the Court be inclined to grant the instant motion (Doc. No. 66-2 and 66-3). The Court has reviewed the motion and supporting papers and **respectfully recommends** that the motion be **granted, in part.** Specifically, the Court recommends that a default judgment be entered, and statutory damages be awarded in the total amount of $10,500.00 (and not the $780,000.00 requested); that the proposed Permanent Injunction be entered; and that an award of

attorney's fees be entered in the amount of $2,180.00, and not the requested $7,474.04 sought by Plaintiff.

## *STANDARD OF REVIEW*

The effect of the entry of a default is that all of the factual allegations in the Complaint are taken as true, save for the amount of unspecified damages. Thus, if liability is well-plead in the complaint, it is established by the entry of a default. *Buchanan v. Bowman,* 820 F.2d 359, 361 (11th Cir. 1987). A court may enter a default judgment only if the factual allegations of the complaint provide a sufficient legal basis for entry of a default judgment. *Nishimatsu Constr. Co. v. Houston National Bank,* 515 F. 2d 1200, 1206 (5th Cir. 1975). If the amount of damages sought are not specified in the Complaint, Plaintiff must prove up the unliquidated sums, in a hearing on damages or otherwise. Rule 55(b)(2), Federal Rules of Civil Procedure.

## *ISSUES AND ANALYSIS*

*Liability*

The motion is directed to the Amended Complaint which alleges, among other things, that "upon information and belief, Defendant Marjorie Higginbotham is an individual who was at pertinent times an officer, shareholder and/or director of Raven Technology, Inc." (Doc. No. 32 at ¶ 7.) It is also alleged that she personally participated in the wrongful conduct complained of and that she derived direct financial benefit from such conduct. *Id.* Although the motion asserts that Higginbotham is the president of Raven Technology, the Amended Complaint does not so allege. It does allege, however, that Defendants are engaged in advertising, marketing, installing and distributing computer software, including Microsoft's programs (Amended Complaint at ¶ 18); that Defendants were involved in counterfeiting and infringing Microsoft's copyrights and trademarks (Amend. Complaint

¶¶ 18 -26), that "on information and belief" Defendants "were willfuly blind and acted in reckless disregard of" Microsoft's rights (Amend. Complaint at ¶¶ 24, and at 30, 42), and that Plaintiff was injured thereby. The Amended Complaint specifically alleges that Microsoft notified Defendants by letter dated March 31, 2004, that its conduct constituted infringing activity, and directed Defendants to cease and desist (Amend. Complaint at ¶ 20). Nevertheless, on or about May 25, 2005, Defendants distributed computer systems with unauthorized copies of software installed, and have distributed counterfeit software on other occasions (*Id.* at 21, 22).

By application of the above standards of law, Defendant admits these well-pled allegations, all of which support a conclusion that, as alleged, Higginbotham is liable for copyright infringement, trademark infringement, false designation of origin, and unfair competition.[1]

*Damages*

The Amended Complaint does not specify the exact amount sought for damages, however, it does reference entitlement to statutory damages under 17 U.S.C. § 504(c) for its copyright infringement claim, and statutory damages for the counterfeit mark count under 15 U.S.C. § 1117(c). In its papers, Plaintiff elects statutory damages, in lieu of proving up actual damages.

The applicable provisions of the Copyright Act and the Lanham Act provide:

(c) Statutory Damages.--

(1) Except as provided by clause (2) of this subsection, the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less

---

[1] Although the Amended Complaint also seeks to impose a constructive trust and for an accounting, it appears that Plaintiff has abandoned these counts as they are not addressed in the proposed Order or Injunction, or the motion/memorandum.

> than $750 or more than $30,000 as the court considers just. For the purposes of this subsection, all the parts of a compilation or derivative work constitute one work.
> (2) In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000. In a case where the infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $200 . . .

17 U.S.C. § 504 (for copyright infringements).

> c) Statutory damages for use of counterfeit marks
>
> In a case involving the use of a counterfeit mark (as defined in section 1116(d) of this title) in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a) of this section, an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of--
> (1) not less than $500 or more than $100,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or
> (2) if the court finds that the use of the counterfeit mark was willful, not more than $1,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

15 U.S.C. § 1117 (trademarks).

Here, Microsoft is asking for an award of $100,000 for each of the six trademarks at issue and $30,000 for each of the six copyrights at issue, for a total of $780,000.00 (Doc. No. 66 at 21). This is the maximum amount that the statutes authorize for non-willful infringement, and substantially less than the maximum available for willful infringement. Although the Court has wide discretion in determining the amount of damages within the statutory limits, Microsoft has not introduced enough evidence to support this high six figure amount. This is especially true in that this Court, in this case, has awarded far less in damages against co-Defendant Raven Technology, Inc., and Plaintiff has asserted that Higginbotham is *vicariously liable* for Raven's conduct. *See* Doc. No. 66 at pgs. 7-13.

As the Court noted with respect to Plaintiff's claim against Raven, in this district, the Court considers several factors in exercising its discretion: 1) the expenses saved and profits reaped by the infringer; 2) revenues lost by the copyright holder as a result of the infringement; 3) and the infringer's state of mind, whether willful, knowing, or innocent. *See Cable/Home Communication Corp. v. Network Productions, Inc.,* 902 F. 2d 829 (11th Cir. 1990); and *Nick-O-Val Music, Inc. v. P.O.S. Radio Inc.,* 656 F. Supp. 826 (M.D. Fla. 1987). Additionally, the Court is mindful of the purposes of the statutory provisions: restitution, preventing unjust enrichment, reparation of injury and, notably, deterrence. *Nintendo of America, Inc. v. Ketchum*, 830 F. Supp. 1443, 1445 (M.D. Fla. 1993).

Although the Amended Complaint alleged willful infringements, and Higginbotham's default admits same, there is no evidence as to the first two factors noted above. As noted, Plaintiff seeks to assert vicarious liability on Higginbotham for the actions of Raven, the corporation. Absent more information, the Court cannot ascertain whether Raven Technology was a "big fish," trafficking in the illegal use of the protected copyrights and marks on a large scale, or a "little fish" mom-and-pop operation, with occasional (but nonetheless illegal) transgressions, due largely to a lack of familiarity with the copyright and trademark laws. Although Microsoft has alleged that Defendants were notified of the infringements and cautioned to desist, but did not do so, it is not clear if that action was willful defiance or a failure on the part of Raven and its officers to comprehend the seriousness of the situation. As the Court noted in prior Report, it does not endorse naiveté as a defense to a suit for willful infringement, but the Court cannot award such a significant amount without at least some evidence as to the extent and significance of the injury to Microsoft (above and beyond that of presumed injury which is inherent in any violation and subsumed in the statutory minimum), or profit

to Raven or Higginbotham.[2] Taking all of the factors into consideration, the Court finds that Plaintiff is entitled to no more than that found appropriate for Raven's conduct; $1,000.00 for each of the six copyrights infringed, and $750.00 for each of the six marks, for a total award of **$10,500.00.** [3]

### *Injunctive Relief*

The Court finds the proposed injunction to be in order, and appropriate under the circumstances. The Amended Complaint sought injunctive relief, and the proposed injunction is tailored to prohibit any and all counterfeit uses of the registered copyrighted materials and marks. As such, the Court **recommends** that the Court grant the request for injunctive relief.

### *Attorney's Fees*

Plaintiff asks for an award of attorney's fees in the total amount of $5,278.71, against Higginbotham. As for entitlement, Plaintiff correctly notes that the Copyright Act allows for a discretionary award of attorney's fees and costs to the prevailing party. *See* 17 U.S.C. § 505. Moreover, the Lanham Act allows for an award of fees to the prevailing party in "exceptional cases." 15 U.S.C. § 1117(a). Plaintiff argues that in view of the recurring infringement, despite notice, an award of fees is appropriate, and this Court agrees. *See Microsoft Corp. v. Black Cat Computer Wholesale, Inc.,* 269 F. Supp.2d 118 (W.D. N.Y. 2002) (willful infringement of software copyrights

---

[2]The Court is mindful of Microsoft's contention that the default deprived Microsoft of discovery as to the extent of the infringements and resulting profit to Raven or Higginbotham and loss to Microsoft, and that statutory damages are provided for just such a situation. Of course, Microsoft could have pursued discovery, notwithstanding the default. In any event, Microsoft still must provide a reason to depart from the statutory minimum. To hold otherwise would result in the maximum award for every default judgment. Such a result is not consistent with the statutory direction that a court exercise discretion in fashioning an award.

[3]Indeed, although Plaintiff cites to many other cases, it failed to cite to or distinguish this Court's opinion regarding the damages awarded via default judgment against Raven.

and trademarks by seller of counterfeit goods warrants award of attorneys fees in addition to damages). At issue is the appropriate amount of the award.

The supporting papers include the Declaration of Caroline Johnson Tanner in Support of Attorney's Fees (Doc. No. 67), which indicates that she is the responsible partner and billing partner on the file, while Mr. Annunziato is a senior associate and local counsel for Microsoft. Ms. Tanner avers that she has spent 2.90 hours at the billed rate of $281.93, on prosecuting the case against this Defendant and Mr. Annunziato has spent 18.10 hours at the billed rate of $241.65 per hour.[4] The work of two legal assistants, at $45 per hour and $95 per hour is also claimed, although the declaration does not explain the discrepancy in rates between the two assistants in the same office. Redacted billing records are presented for the Court's review, and the only evidence of the reasonableness of the fees sought is Ms. Tanner's opinion that the fees charged are "reasonable for the market place."

In evaluating the appropriate amount of the award, the Court follows the familiar lodestar approach, and is guided by the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F. 2d 714 (5th Cir. 1974). *See Casella v. Morris*, 820 F.2d 362 at 367 (11th Cir. 1987)(noting that an award of attorney's fees under the Copyright Act is governed by the guidelines). "The starting point in fashioning an award of attorney's fees is to multiply the number of hours reasonably expended by a reasonable hourly rate." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (per curiam); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable

---

[4] The Affidavit notes that these rates reflect a discount from the standard hourly rates.

skills, experience and reputation. *Gaines v. Dougherty County Board of Education*, 775 F.2d 1565, 1571 (11th Cir. 1985).

Factors to be considered when setting a fee include: 1) the time and labor required; 2) the novelty and difficulty of the issues; 3) the skill required to perform the legal services properly; 4) preclusion of other employment; 5) the customary fee; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation and ability of the attorneys; 10) the undesirability of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). The going rate in the community is the most critical factor in setting the fee rate. *Martin v. University of South Alabama*, 911 F.2d 604, 610 (11th Cir. 1990).

Here, although Ms. Tanner asserts that she "excluded legal work relating to other defendants" this seems unlikely in view of the fact that each count of the Amended Complaint pertained to *all* Defendants and Plaintiff admits that "because of the number of defendants in the case, it is impossible to determine which costs relate specifically to Higginbotham." (Doc. No. 67 at 6). Plaintiff is only entitled to recover against this particular Defendant time spent on prosecuting only this Defendant. Although counsel has provided redacted billing statements, it does not appear to the Court that counsel made appropriate adjustments. For example, the December 2005 entries reflect time spent on the Amended Complaint, which necessarily included other defendants, as well as "preparation of summons to M. Higginbotham, R. Shure and D. Brashear" (Doc. No. 67 at 9). Moreover, there are numerous entries reflecting service on defendants (plural) and settlement negotiations with defendants (*Id.* at 10, 14,17) and an entry regarding "preparation of letter to co-counsel re defendant S. Jacoby's

8aec333d9c50423c

document production" *Id.* at 12. In view of the above, the Court cannot conclude that the amount sought reflects only that time chargeable to this Defendant and therefore finds the amount claimed to be unreasonable.

An award of $2,180.00 is reasonable, in view of the *Johnson* factors. The issues are not novel or difficult, and the expertise required was that of any competent member of the bar familiar with intellectual property issues. There is no evidence that the representation precluded other employment. Nor is there evidence to suggest that the amount involved or results obtained warrant an enhanced award. As for the nature and length of the professional relationship with the client, a review of the docket in this district alone reveals numerous suits filed by this firm on behalf of Microsoft over the course of several years, thus indicating that Microsoft is a well-established client. In view of the regular nature of the employment and the desirability of the client it is reasonable to conclude, as counsel did here, that a discounted rate is appropriate. It is also reasonable to conclude, as this is not the first anti-piracy suit prosecuted by this firm for this client, that counsel did not start wholly from scratch in researching the legal issues involved and drafting the Complaint, nor in drafting the instant motion. *See, for example,* Case No. 8:02cv536-T-17TBM, *Microsoft Corporation v. Pro-Line Software, Inc. d/b/a/ Pro-Line Software, et al.*). Upon review of all of the evidence and the guidelines, the Court finds that the going rate in this community for similar work by lawyers of similar skill for this particular client would be no more than $250.00 an hour, and it would take approximately 8 hours to prosecute the case against this Defendant to this point. Four hours of legal assistant time, at the $45 per hour rate, is also reasonable. As such, the Court **respectfully recommends** an award of $2,180.00.

*CONCLUSION*

It is **respectfully recommended** that the motion be **granted, in part, as follows:** 1) that default judgment be entered in favor of Plaintiff and Plaintiff awarded damages in the total amount of **$10,500.00**, and attorney's fees in the amount of **$2,180.00; and** 2) that the proposed Injunction be entered.  As Plaintiff has waived costs, it is recommended that no cost award be made.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on January 17, 2007.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy