# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**MICROSOFT CORPORATION,**

        **Plaintiff,**

**-vs-**                                    **Case No.  6:05-cv-1346-Orl-28DAB**

**RAVEN TECHNOLOGY, INC., AL
BRINGARDNER, BRETT
BRINGARDNER, NOAH J. PLANTE AND
SCOTT JACOBY,**

        **Defendants.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

       This cause came on for consideration without oral argument on the following motions filed

herein:

| | |
|---|---|
| **MOTION:** | **MOTION FOR DEFAULT JUDGMENT AGAINST ROY SHURE (Doc. No. 87)** |
| **FILED:** | **January 12, 2007** |
| | _____ |
| | **THEREON** it is **RECOMMENDED** that the motion be **GRANTED** in part. |

| | |
|---|---|
| **MOTION:** | **MOTION FOR DEFAULT JUDGMENT AGAINST NOAH J. PLANTE (Doc. No. 88)** |
| **FILED:** | **January 12, 2007** |
| | _____ |
| | **THEREON** it is **RECOMMENDED** that the motion be **GRANTED** in part. |

| | |
|---|---|
| **MOTION:** | **MOTION FOR DEFAULT JUDGMENT AGAINST BRETT BRINGARDNER (Doc. No. 89)** |
| **FILED:** | **January 12, 2007** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED** in part.

| | |
|---|---|
| **MOTION:** | **MOTION FOR DEFAULT JUDGMENT AGAINST DON BRASHEAR (Doc. No. 90)** |
| **FILED:** | **January 12, 2007** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED** in part.

Although the motions are filed separately, each seeks identical relief (see Attachment 1 to each motion) based on virtually identical memoranda.  For the reasons set forth below, it is **respectfully recommended** that the motions be **granted, in part.**  Specifically, the Court recommends that a default judgment be entered against each of these Defendants, and statutory damages be awarded consistent with prior rulings in this case, in the total amount of $10,500.00 (and not the $780,000.00 Plaintiff continues to request without particular support); that the proposed Permanent Injunctions be entered; and that an award of attorney's fees be entered in the amount of $2,180.00, and not the requested $8,791.32 sought by Plaintiff.

### BACKGROUND

The Court has already entered a default judgment in this trademark and copyright infringement case against the corporate defendant, Raven Technology, Inc. (Doc. Nos. 49, 50) and co-defendant Marjorie Higginbotham (Doc. Nos. 93, 97-8).  Defendants Al Bringardner and Scott Jacoby have been dismissed (Doc. Nos. 96, 100).  Thus, only the four Defendants named in the instant motions remain.

With respect to these Defendants, the District Judge entered a default against them based on a finding by the undersigned that these Defendants had abandoned the case (Doc. Nos. 72, 78).  In support of the instant motions, Plaintiff files the Declaration of Caroline Johnson Tanner (Doc. Nos. 85, 86), and has submitted proposed final judgments and proposed permanent injunctions.

### STANDARD OF REVIEW

The effect of the entry of a default is that all of the factual allegations in the Complaint are taken as true, save for the amount of unspecified damages. Thus, if liability is well-plead in the complaint, it is established by the entry of a default. *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987).  A court may enter a default judgment only if the factual allegations of the complaint provide a sufficient legal basis for entry of a default judgment. *Nishimatsu Constr. Co. v. Houston National Bank*, 515 F. 2d 1200, 1206 (5th Cir. 1975).  If the amount of damages sought are not specified in the Complaint, Plaintiff must prove up the unliquidated sums, in a hearing on damages or otherwise.  Rule 55(b)(2), Federal Rules of Civil Procedure.

### ISSUES AND ANALYSIS

*Liability*

The motions are directed to the Amended Complaint, which alleges, among other things, that "upon information and belief" Defendants Bringardner, Plante and Shure were "at pertinent times . . . officer[s], shareholder[s] and/or director[s] of Raven Technology, Inc." (Doc. No. 32 at ¶ 4, 5, 8) and, along with Defendant Brashear "at pertinent times owned, operated, or otherwise controlled" Raven (*Id.* and also ¶9).  It is also alleged that these Defendants personally participated in the wrongful conduct complained of and that they derived direct financial benefit from such conduct. *Id.*

The pleading alleges that Defendants are engaged in advertising, marketing, installing and distributing computer software, including Microsoft's programs (Amended Complaint at ¶ 18); that Defendants were involved in counterfeiting and infringing Microsoft's copyrights and trademarks (*Id.* at ¶¶ 18 -26), that "on information and belief" Defendants "were willfully blind and acted in reckless disregard of" Microsoft's rights (Amend. Complaint at ¶¶ 24, and at 30, 42), and that Plaintiff was injured thereby.  The Amended Complaint specifically alleges that Microsoft notified Defendants by letter dated March 31, 2004, that its conduct constituted infringing activity, and directed Defendants to cease and desist (Amend. Complaint at ¶ 20).  Nevertheless, on or about May 25, 2005, Defendants distributed computer systems with unauthorized copies of software installed, and have distributed counterfeit software on other occasions (*Id.* at 21, 22).

By application of the above standards of law, Defendants admits these well-pled allegations, all of which support a conclusion that, as alleged, they are liable for copyright infringement, trademark infringement, false designation of origin, and unfair competition.[1]

*Damages*

The Amended Complaint does not specify the exact amount sought for damages, however, it does reference entitlement to statutory damages under 17 U.S.C. § 504(c) for its copyright infringement claim, and statutory damages for the counterfeit mark count under 15 U.S.C. § 1117(c). In its papers, Plaintiff elects statutory damages, in lieu of proving up actual damages.

The applicable provisions of the Copyright Act and the Lanham Act provide:

(c) Statutory Damages.--

---

[1]

Although the Amended Complaint also seeks to impose a constructive trust and for an accounting, it appears that Plaintiff has abandoned these counts as they are not addressed in the proposed Order or Injunction or the motions/memoranda.

(1) Except as provided by clause (2) of this subsection, the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just.  For the purposes of this subsection, all the parts of a compilation or derivative work constitute one work.
(2) In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000. In a case where the infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $200 . . .

17 U.S.C. § 504 (for copyright infringements).

c) Statutory damages for use of counterfeit marks

In a case involving the use of a counterfeit mark (as defined in section 1116(d) of this title) in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a) of this section, an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of--
(1) not less than $500 or more than $100,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or
(2) if the court finds that the use of the counterfeit mark was willful, not more than $1,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

15 U.S.C. § 1117 (trademarks).

Here, Microsoft is asking for an award of $100,000 for each of the six trademarks at issue and $30,000 for each of the six copyrights at issue, for a total of $780,000.00.  This is the maximum amount that the statutes authorize for non-willful infringement, and substantially less than the maximum available for willful infringement. Although the Court has wide discretion in determining the amount of damages within the statutory limits, Microsoft has not introduced enough evidence to

support this high six figure amount.  This is especially true in that this Court, in this case, has awarded far less in damages against co-Defendant Raven Technology, Inc., and Plaintiff has asserted that these Defendants are vicariously liable for Raven's conduct.

As the Court noted with respect to Plaintiff's claim against Raven and Higginbotham, in this district, the Court considers several factors in exercising its discretion: 1) the expenses saved and profits reaped by the infringer; 2) revenues lost by the copyright holder as a result of the infringement; 3) and the infringer's state of mind, whether willful, knowing, or innocent. *See Cable/Home Communication Corp. v. Network Productions, Inc.,* 902 F. 2d 829 (11th Cir. 1990); and *Nick-O-Val Music, Inc. v. P.O.S. Radio Inc*., 656 F. Supp. 826 (M.D. Fla. 1987). Additionally, the Court is mindful of the purposes of the statutory provisions: restitution, preventing unjust enrichment, reparation of injury and, notably, deterrence. *Nintendo of America, Inc. v. Ketchum*, 830 F. Supp. 1443, 1445 (M.D. Fla.1993).

Although the Amended Complaint alleged willful infringements, and the defaults admit same, there is no evidence as to the first two factors noted above. As noted, Plaintiff seeks to assert vicarious liability for the actions of Raven, the corporation.  Absent more information, the Court cannot ascertain whether Raven Technology was a "big fish," trafficking in the illegal use of the protected copyrights and marks on a large scale, or a "little fish" mom-and-pop operation, with occasional (but nonetheless illegal) transgressions, due largely to a lack of familiarity with the copyright and trademark laws. Although Microsoft has alleged that Defendants were notified of the infringements and cautioned to desist, but did not do so, it is not clear if that action was willful defiance or a failure on the part of Raven and its officers to comprehend the seriousness of the situation.  As the Court noted in prior Reports, it does not endorse naiveté as a defense to a suit for willful infringement, but

the Court cannot award such a significant amount without at least some evidence as to the extent and significance of the injury to Microsoft (above and beyond that of presumed injury which is inherent in any violation and subsumed in the statutory minimum), or profit to Defendants. For the reasons already expressed by this Court with respect to the judgments entered against co-Defendants, the Court finds that Plaintiff is entitled to no more than that found appropriate for Raven's conduct: $1,000.00 for each of the six copyrights infringed, and $750.00 for each of the six marks, for a total award of $10,500.00 as to each of these Defendants.

*Injunctive Relief*

The Court finds the proposed injunctions to be in order and appropriate under the circumstances.  The Amended Complaint sought injunctive relief, and the proposed injunctions are tailored to prohibit any and all counterfeit uses of the registered copyrighted materials and marks.  As such, the Court recommends that the Court grant the request for injunctive relief.

*Attorney's Fees*

Plaintiff asks for an award of attorney's fees in the total amount of $8,791.32 against each Defendant.  As for entitlement, Plaintiff correctly notes that the Copyright Act allows for a discretionary award of attorney's fees and costs to the prevailing party.  *See* 17 U.S.C. § 505. Moreover, the Lanham Act allows for an award of fees to the prevailing party in "exceptional cases." 15 U.S.C. § 1117(a).  Plaintiff argues that in view of the recurring infringement, despite notice, an award of fees is appropriate, and, as set forth in Prior Reports, this Court agrees.  At issue is the appropriate amount of the award.

The supporting papers include the Declaration of Caroline Johnson Tanner in Support of Attorney's Fees (Doc. Nos. 85-86), which indicate that she is the responsible partner and billing

partner on the file, while Mr. Annunziato is a senior associate and local counsel for Microsoft. Ms. Tanner avers that she has spent 64.2 hours at the billed rate of $281.93 (prior to October 1, 2006) and $308.78 since October 1, 2006.  Mr. Annunziato has spent 47.0 hours at the billed rate of $241.65 per hour prior to October 1, and $264.02 since then.  Associate Rebecca Martel has spent 3.2 hours at the rate of $196.90 per hour.  The work of two legal assistants, at $40.28 per hour and $143.20 per hour is also claimed, although the declaration does not explain the discrepancy in rates between the two assistants in the same office.  All told, counsel claims that Microsoft has been billed $31,999.34 by counsel "for legal work associated with the prosecution of the case against the Defendants, excluding work relating to the other defendants in this case. . ." (Doc. No. 86-2 at 5).  Voluminous redacted billing records are presented for the Court's review.

As this Court has noted in prior Report, in evaluating the appropriate amount of the award, the Court follows the familiar lodestar approach, and is guided by the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *See Casella v. Morris*, 820 F.2d 362 at 367 (11th Cir. 1987) (noting that an award of attorney's fees under the Copyright Act is governed by the guidelines). "The starting point in fashioning an award of attorney's fees is to multiply the number of hours reasonably expended by a reasonable hourly rate." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (per curiam); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation. *Gaines v. Dougherty County Board of Education*, 775 F.2d 1565, 1571 (11th Cir. 1985).

Factors to be considered when setting a fee include: 1) the time and labor required; 2) the novelty and difficulty of the issues; 3) the skill required to perform the legal services properly; 4)

preclusion of other employment; 5) the customary fee; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation and ability of the attorneys; 10) the undesirability of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). The going rate in the community is the most critical factor in setting the fee rate. *Martin v. University of South Alabama*, 911 F.2d 604, 610 (11th Cir. 1990).

Here, although Ms. Tanner asserts that she "excluded legal work relating to other defendants" this assertion is belied by the billing statements (which include work relating to Higginbotham, Raven and other defendants) and her admission that "[i]t is virtually impossible to allocate fees and expenses individually to these Defendants" (Doc. No. 86-2 at 6). Tanner acknowledges that each count of the Amended Complaint pertained to all Defendants and significant overlap occurred in the process of discovery, mediation and motion practice. Moreover, Plaintiff has already recovered an attorney's fee with respect to the prosecution of the case against Raven and Higginbotham. As Plaintiff is only entitled to recover against a particular Defendant time spent on prosecuting only that Defendant, and time already awarded has not been excluded from the instant requests, Plaintiff's suggestion that the Court just split the $31,999.34 four ways is rejected as unreasonable.[2]

As noted in prior Report, an award of $2,180.00 for each Defendant is reasonable, in view of the *Johnson* factors. The issues are not novel or difficult, and the expertise required was that of any competent member of the bar familiar with intellectual property issues. There is no evidence that the

---

[2] Indeed, the billing statements reflect time spent on dismissed defendants such as a response to Defendant Jacoby's motion to dismiss (10/17/05 entry), telephone conference with Jacoby (11/17/05 entry), letter to A. Bringardner re discovery responses and motion to compel (3/1/06).

representation precluded other employment.  Nor is there evidence to suggest that the amount involved or results obtained warrant an enhanced award. As for the nature and length of the professional relationship with the client, a review of the docket in this district alone reveals numerous suits filed by this firm on behalf of Microsoft over the course of several years, thus indicating that Microsoft is a well-established client.  In view of the regular nature of the employment and the desirability of the client it is reasonable to conclude, as counsel did here, that a discounted rate is appropriate.  It is also reasonable to conclude, as this is not the first anti-piracy suit prosecuted by this firm for this client, that counsel did not start wholly from scratch in researching the legal issues involved and drafting the Complaint, nor in drafting the instant motions. *See, for example*, Case No. 8:02cv536-T-17TBM, *Microsoft Corporation v. Pro-Line Software, Inc. d/b/a/ Pro-Line Software, et al.)* and the prior motions for default judgment filed in this case.[3]

Upon review of all of the evidence and the guidelines, the Court finds that the going rate in this community for similar work by lawyers of similar skill for this particular client would be no more than $250.00 an hour, and it would take approximately 8 hours to prosecute the case against these Defendants to this point.  Four hours of legal assistant time, at $45 per hour, is also reasonable.  In view of Tanner's assertion that Plaintiff's approach to prosecuting (and attempting to resolve this matter) was identical as to each Defendant, with "virtually identical" settlement overtures, "virtually identical" attempts to communicate regarding depositions and motions, and one motion for sanctions, one mediation, and one amended complaint pertaining to all four filed (Doc. No. 85-2 at pg. 6), it appears that there is no reason to adjust the fee upward with respect to any particular defendant to

---

[3]The Court also questions, in view of the fact that the parties did not present a robust defense and counsel relied in large measure on form filings, why five professionals were needed in order to obtain the result present here.

account for additional work.  As such, the Court respectfully **recommends** an award of **$2,180.00** per Defendant.   This is in line with fees awarded Plaintiff against co-Defendants Raven and Higginbotham.

It is therefore **respectfully recommended** that the District Court grant the motions, in part, enter judgment consistent with this Report, and close the case.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on February 23, 2007.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy